BETTY HOUSE, Plaintiff-Appellant, v. SWEDISHAMERICAN HOSPI-
TAL, Defendant-Appellee.

Second District   No. 2—90—0185

Opinion filed December 19, 1990.—Rehearing denied January 22, 1991.

James G. Madden, of Madden & Sisler, of Freeport, for appellant.

Lisa A. Jensen, Hugh C. Griffin, and Diane I. Jennings, all of Lord, Bissell & Brook, of Rockford, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Betty House, appeals from an order of the circuit court of Winnebago County directing a verdict in favor of defendant, SwedishAmerican Hospital. On appeal, plaintiff contends that the trial court erred in: (1) refusing to release medical records in defendant's possession to plaintiff; (2) prohibiting plaintiff from deposing, contacting, or disclosing the identity of a patient at the hospital; and (3) improperly excluding certain exhibits from evidence at trial. We affirm in part, reverse in part, and remand.

On June 14, 1985, plaintiff filed a complaint alleging that defendant carelessly and negligently permitted a patient in the hospital to inflict injuries upon her in a hospital lounge on November 30, 1983. On July 15, 1985, defendant filed a motion to dismiss the complaint, which was subsequently granted. On October 25, 1985, plaintiff filed an amended complaint which alleged that defendant "knew or should have known" that the patient was dangerous based upon the patient's "prior conduct."

During the discovery process, plaintiff filed a motion to compel the production of documents, including reports concerning the incident in question and "[a]ny and all documents or writings relating to the condition of the patient" who allegedly injured plaintiff. Defend-

ant filed a response opposing plaintiff's motion, arguing that the requested information was privileged and confidential for several reasons. On November 10, 1988, the trial court ordered defendant to produce the documents for an *in camera* inspection. After inspecting the documents, the court determined that plaintiff was entitled to discovery of the records because the records were "relevant, probative, not unduly prejudicial or inflammatory and that other satisfactory evidence is demonstrably unsatisfactory as evidence of the facts sought to be established." The court further found that disclosure was important to further the interests of justice. However, all references identifying the nonparty patient would be eliminated before plaintiff received the documents.

Defendant filed a motion to reconsider the court's decision, again arguing that the records were confidential. Defendant further argued that deleting identifying information would not assure protection of the patient's identity. On December 30, 1988, the trial court denied defendant's motion to reconsider, but modified its previous order to state that defendant was only required to produce the patient's hospital records for the admission during the time in question. The court removed seven pages of these records because the information was confidential and not relevant to the lawsuit. The court further ordered that plaintiff was not entitled to discover records of the patient's prior admissions at the hospital.

On January 6, 1989, the trial court granted plaintiff leave to depose Dr. David Stinson, the patient's psychiatrist. Thereafter, defendant filed a motion to prohibit plaintiff from deposing Dr. Stinson. Dr. Stinson also filed a petition to quash the subpoena for his deposition. On June 30, 1989, the trial court denied defendant's motion and Dr. Stinson's petition, but ruled that plaintiff could not elicit testimony concerning the patient's identity.

Following Dr. Stinson's deposition, plaintiff became aware of the patient's identity, apparently due to Dr. Stinson's inadvertent disclosure. Defendant then moved for a protective order. On August 1, 1989, the trial court issued a protective order which prevented plaintiff from contacting, deposing or disclosing the identity of the patient. A trial date of November 7, 1989, was then set. On November 8, 1989, defendant made an oral motion *in limine* seeking to exclude any testimony relating to the patient's medical records. The court asked plaintiff to make an offer of proof before it ruled on defendant's motion. Plaintiff informed the court that exhibit Nos. 11 through 19 contained the notes of the nurses who treated the nonparty patient. These exhibits contained part of the hospital records released to

plaintiff pursuant to the trial court's December 30, 1988, order.

Plaintiff's offer of proof pointed out several instances of the patient's conduct while at the hospital. Included among these instances were situations in which the patient drank cups of hot water, drank water from faucets and toilets, snuck coffee from the dietary cart, removed the IV needle, and was found in the lounge smoking a cigarette. The patient was also restless, was walking in the hallways, and refused to put on her hospital gown. In addition, the patient was agitated and had some "behavioral problems," for which Xanax was prescribed. Based on these events, plaintiff contended that defendant should have known of what the patient "could perhaps do."

The court then ruled that exhibit No. 11 would be admitted, but that Nos. 12 through 19 were inadmissible because they contained confidential information protected under the Mental Health and Developmental Disabilities Confidentiality Act (Mental Health Act) (Ill. Rev. Stat. 1987, ch. 91½, par. 801 et seq.). Plaintiff continued with a summary of the testimony for purposes of the offer of proof, after which defendant orally moved for a directed verdict. Defendant argued that plaintiff could not prove that the patient's alleged assault of plaintiff was in any way foreseeable by defendant. Thus, defendant argued that it in no way acted negligently in failing to prevent the alleged assault. The trial court granted defendant's motion, and this appeal followed.

Plaintiff first contends that the trial court erred in refusing to release the patient's medical records for previous admissions at SwedishAmerican Hospital. Plaintiff argues that the records of the patient's two previous hospital admissions were relevant on the issue of whether defendant had any prior knowledge of the patient's violent tendencies.

Plaintiff points out that the trial court originally determined that she was entitled to all of the patient's records while the patient was at SwedishAmerican Hospital. However, the court modified this decision following defendant's motion to reconsider and ruled that only the records of the November 1983 admission, excluding seven pages, were discoverable.

■■ ■ Plaintiff's production request was premised on section 8—402 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1987, ch. 110, par. 8—402) and Supreme Court Rule 201 (107 Ill. 2d R. 201). Section 8—402 of the Code provides, in pertinent part:

> "The circuit courts shall have power, in any action pending before them, upon motion, and good and sufficient cause shown *** to require the parties, or either of them, to produce books

or writings in their possession of power which contain evidence pertinent to the issue." (Ill. Rev. Stat. 1987, ch. 110, par. 8—402.)

In addition, Supreme Court Rule 201 provides that "discovery or inspection of documents or property" is obtainable. (107 Ill. 2d R. 201(a).) The rule goes on to state:

"[A] party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking disclosure or of any other party, including the existence, description, nature, custody, condition, and location of any documents or tangible things, and the identity and location of persons having knowledge of relevant facts." (107 Ill. 2d R. 201(b)(1).)

Plaintiff asserts that the records at issue in this case were discoverable because she had the burden of establishing that defendant had knowledge of the potential conduct of the patient; thus, any information concerning defendant's knowledge contained in the medical records would be relevant to the issue in the case.

Defendant disagrees, arguing instead that the information in the records was confidential pursuant to the Mental Health Act (Ill. Rev. Stat. 1987, ch. 91½, par. 803) and was protected under the physician-patient privilege (Ill. Rev. Stat. 1987, ch. 110, par. 8—802). We will address each of defendant's arguments in turn.

■■ ■ Section 3(a) of the Mental Health Act provides: "All records and communications shall be confidential and shall not be disclosed except as provided in this Act." (Ill. Rev. Stat. 1987, ch. 91½, par. 803(a).) A "record" encompasses "any record kept by a therapist or by an agency in the course of providing mental health or developmental disabilities service to a recipient." (Ill. Rev. Stat. 1987, ch. 91½, par. 802(7).) A "communication" includes information which "indicates that a person is a recipient." (Ill. Rev. Stat. 1987, ch. 91½, par. 802(1).) The purpose of the Mental Health Act is to protect the confidentiality of the records and communications of those persons receiving mental health services. (*Laurent v. Brelji* (1979), 74 Ill. App. 3d 214, 216.) This general prohibition against disclosure of this information was enacted to protect the patient's privacy rights, along with providing an inducement to seek such treatment. *Laurent*, 74 Ill. App. 3d at 217.

Defendant argues that *Pritchard v. SwedishAmerican Hospital* (1989), 191 Ill. App. 3d 388, controls this issue. In *Pritchard*, we ruled that a hospital did not have to answer an interrogatory which

asked whether the hospital required a physician to undergo psychiatric testing as a condition of employment. (191 Ill. App. 3d at 403.) We pointed out that the requested information would require the hospital to disclose whether the physician was a recipient of mental health services, information which was clearly protected under the Mental Health Act. 191 Ill. App. 3d at 403.

■ A review of the record in the present case indicates that the patient's medical records would reveal that the patient had a "long history of chronic undifferentiated schizophrenia" and had been institutionalized in the past. The records also indicated the particular drugs which were prescribed to the patient to treat the illness. We find that this information, if disclosed, would reveal that the patient was a recipient of mental health services and would result in a violation of the Mental Health Act. (See Ill. Rev. Stat. 1987, ch. 91½, par. 802(1); *Pritchard*, 191 Ill. App. 3d at 402-03.) Consequently, the patient's hospital records concerning previous psychiatric admissions and treatment were not discoverable in this case.

In making this determination, we note that none of the statutory exceptions allowing disclosure by court order are applicable here. (See Ill. Rev. Stat. 1987, ch. 91½, pars. 810(a)(1) through (a)(9).) We are also mindful of plaintiff's argument in her reply brief indicating that the patient was not in the hospital in November 1983 for a psychiatric problem, but instead was admitted for medical reasons. Our holding on this issue applies to the records associated with the patient's previous hospital admissions for psychiatric treatment and is based on the Mental Health Act. This act only prohibits the disclosure of the patient's hospital records concerning psychiatric treatment.

■ In addition, we agree with defendant that the physician-patient privilege (Ill. Rev. Stat. 1987, ch. 110, par. 8—802) protected the patient's medical records from being disclosed in this case. The physician-patient privilege provides, in pertinent part:

"No physician or surgeon shall be permitted to disclose any information he or she may have acquired in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient ***." (Ill. Rev. Stat. 1987, ch. 110, par. 8—802.)

This privilege was enacted to encourage free disclosure between the patient and physician and to protect the patient's privacy rights. (*Petrillo v. Syntex Laboratories, Inc.* (1986), 148 Ill. App. 3d 581, 602-03, *cert. denied* (1987), 483 U.S. 1007, 97 L. Ed. 2d 738, 107 S. Ct. 3232.) However, the privilege is not absolute, and the statute contains several exceptions whereby the privilege does not apply. (See Ill. Rev.

Stat. 1987, ch. 110, pars. 8—802(1) through (9).) Defendant correctly points out that none of these exceptions apply in this case.

We have recently decided the rights of nonparty patients with respect to the physician-patient privilege *vis-a-vis* a medical malpractice action in *Ekstrom v. Temple* (1990), 197 Ill. App. 3d 120. In *Ekstrom*, we held that the medical records of nonparty patients were privileged and not subject to disclosure, even though a different result would have been reached had the patients been parties to the malpractice action, based upon an exception to the privilege. *Ekstrom*, 197 Ill. App. 3d at 130; see also *Parkson v. Central Du Page Hospital* (1982), 105 Ill. App. 3d 850, 854-55.

■ We agree with the trial court's decision that the medical records of the nonparty patient were protected based on the physician-patient privilege. These records contained information on history, diagnosis, and treatment, all of which the privilege protects. Thus, the nonparty patient's medical records, including the records concerning the November 1983 admission, contained confidential information which the physician-patient privilege protected from disclosure.

In making our determination, we are aware that much of the information contained in the nonparty patient's medical records would be relevant to the issue involved in this case. Unfortunately for plaintiff, the privilege involved in this case will often act to bar what is clearly relevant and material information. See *Laurent*, 74 Ill. App. 3d at 217 ("[i]mplicit in every testimonial privilege is the assumption that the privileged matter may indeed be highly probative of the issues in dispute").

Furthermore, we agree with defendant that simply deleting the patient's name from the medical records will not protect the confidentiality to which the patient is entitled. See *Ekstrom*, 197 Ill. App. 3d at 130; *Parkson*, 105 Ill. App. 3d at 855 (patients' medical records contain information which in the cumulative can make the possibility of recognition of the patients very high).

Plaintiff next argues that the trial court erred in prohibiting her from contacting, deposing, or disclosing the identity of the patient who allegedly assaulted her. Plaintiff contends that it was necessary for her to depose the patient in order to present evidence to show that defendant had knowledge of the patient's psychiatric problems.

A review of the record reveals that the trial court's order on June 30, 1989, prohibited plaintiff from eliciting testimony from Dr. Stinson concerning the patient's identity. However, plaintiff inadvertently discovered the patient's identity following Dr. Stinson's deposition. On August 1, 1989, the trial court granted defendant's motion for a pro-

tective order, thereby prohibiting plaintiff from contacting, deposing, or disclosing the identity of the patient.

■■ Plaintiff argues that the trial court erred in entering the protective order in this case. Defendant contends that the protective order was appropriate to prevent the disclosure of confidential information (the patient's identity). Supreme Court Rule 201(c)(1) (107 Ill. 2d R. 201(c)(1)) provides:

"The court may at any time on its own initiative, or on motion of any party or witness, make a protective order as justice requires, denying, limiting, conditioning, or regulating discovery to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression."

Defendant argues that justice required the protective order to prevent "embarrassment" to the patient.

■■ We disagree with defendant on this issue and hold that plaintiff was entitled to know the identity of the patient who allegedly attacked her and may contact and depose the patient if plaintiff so desires. Simply revealing the patient's identity, in and of itself, will not result in the disclosure of confidential communications. It is evident that disclosure of the patient's name does not violate the physician-patient privilege. (See *Davis v. Hinde* (1986), 141 Ill. App. 3d 664, 666; *Geisberger v. Willuhn* (1979), 72 Ill. App. 3d 435, 438.) As *Geisberger* pointed out, the name of the patient generally has no relation to the ailment or treatment and therefore is not privileged information. *Geisberger*, 72 Ill. App. 3d at 437.

Plaintiff was entitled to contact and depose the patient who allegedly attacked her in order to obtain information from the patient concerning the alleged assault. While plaintiff still would not be able to discover information concerning the patient's medical history and records, unless the patient waived any privileges and consented to releasing this information, plaintiff would be able to attempt to establish what defendant knew about the patient's activities on the days preceding the alleged assault. The patient's physical activities at the hospital during the November 1983 admission were certainly relevant and material in showing just what the hospital knew or had reason to know concerning this issue.

■■ Our finding on this issue is also consistent with section 10(b) of the Mental Health Act (Ill. Rev. Stat. 1987, ch. 91½, par. 810(b)), which allows a court to issue a protective order to "protect the confidentiality, privacy, and safety of the recipient or of other persons." The patient was not a recipient of mental health services during the November 1983 admission, and furthermore, the deposition of the pa-

tient would not necessarily reveal confidential information. Under these circumstances, we believe that the trial court erred in issuing a protective order preventing plaintiff from contacting, deposing or revealing the name of the patient who allegedly assaulted plaintiff.

Plaintiff's last contention on appeal is that the trial court erred in refusing to admit exhibits Nos. 12 through 19 at trial. Although plaintiff has not included copies of these exhibits in the record on appeal, they apparently contained the nurses' notes relating to the patient's conduct during the November 1983 hospital admission. Plaintiff asserts that neither the Mental Health Act nor the physician-patient privilege prohibits the use of these exhibits at trial. Defendant disagrees, arguing instead that the exhibits were barred under either of these theories.

█ Our review of this issue leads us to conclude that the physician-patient privilege, but not the Mental Health Act, bars the use of the nurses' notes at trial. With respect to the Mental Health Act, it is evident that this act only applies to situations in which the patient is seeking treatment for a mental health condition. (See Ill. Rev. Stat. 1987, ch. 91½, pars. 802(1), (7).) In the present case, the nonparty patient was in the hospital for medical reasons, apparently to seek treatment for a digestive disorder. Thus, the Mental Health Act does not apply in this instance.

█ However, we reach a different result when we analyze this issue under the physician-patient privilege. As we previously stated, this privilege pertains to any information which a physician obtains "in attending any patient in a professional character, necessary to enable him or her professionally to serve such patient." (Ill. Rev. Stat. 1987, ch. 110, par. 8—802.) The nurses' notes present in this case were placed in the patient's medical record and were intended to be used by the physicians in rendering medical treatment to the patient. Thus, these notes were necessary to enable the physician to render professional services to the patient and were thus protected under the physician-patient privilege. See generally *Roberson v. Liu* (1990), 198 Ill. App. 3d 332, 338 (*ex parte* communications between an attorney and a party's treating nurse, outside of the authorized discovery process, are prohibited in order to strengthen the public policy of confidentiality in the physician-patient privilege).

In summary, we conclude that the trial court properly held that the patient's medical records, along with the nurses' notes (exhibit Nos. 12 through 19), contained confidential information which plaintiff was not entitled to discover. However, the trial court erred in denying plaintiff the opportunity to contact, depose or disclose the identity of

the patient who allegedly assaulted her. On remand, plaintiff should be given the chance to contact the patient in order to obtain information relating to the patient's activities at the hospital.

For these reasons, the judgment of the circuit court of Winnebago County is affirmed in part and reversed in part. The cause is remanded for further proceedings consistent with this decision.

Affirmed in part; reversed in part and remanded.

BOWMAN and NICKELS, JJ., concur.