AMY SUAREZ, Plaintiff-Appellant, v. JAMES PIERARD *et al.*, Defendants-Appellees.

Third District    No. 3—95—0384

Opinion filed March 26, 1996.

BRESLIN, P.J., specially concurring.
LYTTON, J., dissenting.

William P. Hintz (argued), of Schweickert & Ganassin, of Peru, for appellant.

Karen L. Kendall, Stephen J. Heine, and Craig Unrath (argued), all of Heyl, Royster, Voelker & Allen, of Peoria, for appellee.

JUSTICE SLATER delivered the judgment of the court and the following opinion:

Plaintiff Amy Suarez filed a two-count complaint against defendants James Pierard and K mart Corporation. The defendants filed a motion to dismiss for failure to state a cause of action (735 ILCS 5/2—615 (West 1992)). The trial court dismissed the complaint but granted leave to amend count II. Subsequently, count II was also dismissed for failure to state a cause of action and this appeal followed. We affirm.

According to the allegations contained in plaintiff's complaint, on December 13, 1992, plaintiff went to the pharmacy at a K mart store to have a prescription filled. The prescription was for certain drugs

used in the treatment of mental health disorders. Defendant Pierard, the pharmacist on duty, questioned plaintiff about her treatment and condition and plaintiff disclosed confidential information to Pierard. Plaintiff later had a chance meeting with Pierard in a public tavern. According to plaintiff's complaint, Pierard discussed confidential information concerning plaintiff's treatment in the presence of several people, thereby embarrassing and humiliating plaintiff. Count I of plaintiff's complaint alleged that Pierard had a duty not to disclose information concerning plaintiff's medical treatment under the Mental Health and Developmental Disabilities Confidentiality Act (the Confidentiality Act) (740 ILCS 110/1 *et seq.* (West 1992)). Count II alleged the existence of an implied contract between plaintiff and defendants, which Pierard breached by disclosing the confidential information. As indicated above, the trial court dismissed plaintiff's complaint for failure to state a cause of action.

In reviewing the dismissal of a complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)), we must determine whether the complaint, when viewed in the light most favorable to the plaintiff, alleges facts sufficient to establish a cause of action. *Ziemba v. Mierzwa,* 142 Ill. 2d 42, 566 N.E.2d 1365 (1991). In making this determination, we take as true all well-pleaded facts in the complaint (*Ziemba,* 142 Ill. 2d 42, 566 N.E.2d 1365) and reasonable inferences drawn from those facts (*Stinson v. Physicians Immediate Care, Ltd.,* 269 Ill. App. 3d 659, 646 N.E.2d 930 (1995)). The trial court's dismissal of a complaint under section 2—615 is subject to *de novo* review. *Stinson,* 269 Ill. App. 3d 659, 646 N.E.2d 930.

Plaintiff contends that count I states a cause of action under the Confidentiality Act. Section 15 of the Act provides that persons aggrieved by a violation of the Act may sue for damages, an injunction or other relief. 740 ILCS 110/15 (West 1992). Section 3 of the Act states that all records and communications are confidential and shall not be disclosed except as provided in the Act. 740 ILCS 110/3 (West 1992). Confidential communications are defined as those "made by a recipient or other person to a therapist *** includ[ing] information which indicates that a person is a recipient." 740 ILCS 110/2(1) (West 1992). Section 2(9) of the Act defines a therapist as:

> "[A] psychiatrist, physician, social worker, or nurse providing mental health or developmental disabilities services or any other person not prohibited by law from providing such services or from holding himself out as a therapist if the recipient reasonably believes that such person is permitted to do so. Therapist includes any successor of the therapist." 740 ILCS 110/2(9) (West 1992).

Plaintiff maintains that a pharmacist, although not specifically referred to in section 9, is included within the definition of a therapist as "any other person" who provides mental health services. Plaintiff notes that a 1976 report by the Governor's Commission for Revision of the Mental Health Code (the Governor's report) states that the definition of therapist contained in the Confidentiality Act should include a wide range of recognized professionals and that it is the type of communication which is being protected, not the professional status of the therapist.

■ We initially note that the Governor's report cited by plaintiff is not included in the record on appeal but is instead contained in the appendix of plaintiff's brief. Attachments to briefs which are not otherwise of record are not properly before the reviewing court and cannot be used to supplement the record. *Barker v. Eagle Food Centers, Inc.*, 261 Ill. App. 3d 1068, 634 N.E.2d 1276 (1994); *Denny v. Haas*, 197 Ill. App. 3d 427, 554 N.E.2d 727 (1990). Moreover, even if we were to consider the Governor's report, we do not believe that it supports plaintiff's position. The report states that the Confidentiality Act was intended to apply to persons with whom the recipient enters into a therapeutic relationship, thereby providing a shield of confidentiality for that relationship which would encourage the open communication necessary for effective therapy. See also *Martino v. Family Service Agency*, 112 Ill. App. 3d 593, 449 N.E.2d 6 (1982) (Governor's report indicates that Confidentiality Act was intended to apply to persons entering into a therapeutic relationship). We do not believe that the concept of a therapeutic relationship is so expansive that it includes a routine transaction with a pharmacist, even where, as plaintiff alleges, the pharmacist questions plaintiff about her treatment and medical condition. Such questions are not, in our opinion, "therapy," nor do they establish a "relationship" as contemplated by the Confidentiality Act.

■ Plaintiff also contends that a pharmacist is a therapist under the Confidentiality Act because he dispenses pharmaceuticals. Section 2(3) of the Act provides that mental health services include "examination, diagnosis, evaluation, treatment, training, *pharmaceuticals*, aftercare, habilitation or rehabilitation." (Emphasis added.) 740 ILCS 110/2(3) (West 1992). Therefore, argues plaintiff, since a therapist includes any person not prohibited by law from providing mental health services (740 ILCS 110/2(9) (West 1992)), and mental health services include pharmaceuticals, a pharmacist is by definition a therapist.

In our opinion plaintiff ignores the distinction between prescribing drugs and merely dispensing them. A physician or psychiatrist

may prescribe medications as one component of a patient's mental health treatment. The decision to use such drugs depends upon many factors, including the needs of the patient, the effect of the drug, and the effectiveness of other types of treatment. The use of these pharmaceuticals by the therapist is thus clearly a means of providing mental health services. The pharmacist, on the other hand, is largely limited to filling the prescription as ordered by the physician. His function is essentially that of providing a product to a customer, not providing mental health services to a patient.

■ Plaintiff next directs our attention to the Pharmacy Practice Act of 1987 (Pharmacy Act) (225 ILCS 85/1 *et seq.* (West 1992)), which provides that the practice of pharmacy includes "advising or counseling patients on the use of drugs or devices" (225 ILCS 85/3(d)(6) (West 1992)) and "providing health information related to drugs and medical devices" (225 ILCS 85/3(d)(9) (West 1992)). Plaintiff maintains that these provisions support her contention that a pharmacist and his customer are engaged in a therapeutic relationship.

We do not believe that merely advising a person about the use of drugs or providing information about the drugs establishes a therapeutic relationship with that person. Warning about potential side effects is not therapy, nor does it change the nature of the relationship between a pharmacist and his customer to that of therapist and patient. A pharmacist does not become a provider of mental health services simply by filling a prescription for drugs used to treat a mental condition.

Plaintiff further notes that the Pharmacy Act was amended after her cause of action accrued to include a definition of confidential information as "information, maintained by the pharmacist in the patient's records, released only (i) to the patient or, as the patient directs, to other practitioners and other pharmacists or (ii) to any other person or governmental agency authorized by law to receive the information." 225 ILCS 85/3(p) (West 1994). Plaintiff argues that this indicates that the legislature does not condone the release of confidential information by a pharmacist.

First, as plaintiff acknowledges, the definition referred to by plaintiff was not part of the Pharmacy Act when plaintiff's cause of action accrued. See Pub. Act 87—1237, eff. December 22, 1992 (amending 225 ILCS 85/3 (West 1992)). Second, unlike the Confidentiality Act, the Pharmacy Act does not create a cause of action for damages for violation of the Act. Compare 740 ILCS 110/15 (West 1992) (person injured by violation of Confidentiality Act may sue for damages or injunctive relief), with 225 ILCS 85/30 (West 1992)

(Department of Professional Regulation may revoke or suspend license of a pharmacist for violating Pharmacy Act), and 225 ILCS 85/35.1(b) (West 1992) (person injured by person practicing pharmacy without a license may petition for injunctive relief). Third, the Pharmacy Act does not incorporate the provisions of the Confidentiality Act by reference. *Cf.* 225 ILCS 107/75(e) (West 1994) (incorporating provisions of the Confidentiality Act into the Professional Counselor and Clinical Professional Counselor Licensing Act). Indeed, the only reference to the Confidentiality Act contained in the Pharmacy Act provides that in the event of a conflict between the two, the provisions of the Pharmacy Act shall govern. See 225 ILCS 85/37 (West 1992). We find nothing in the Pharmacy Act indicating that the legislature intended to make pharmacists subject to the Confidentiality Act. We hold, therefore, that the trial court properly dismissed count I of plaintiff's complaint for failure to state a cause of action.

The dissent notes that under the Pharmacy Act, the practice of pharmacy includes "advising or counseling patients," "providing health information," "keeping personal medication records" and "recommending or advising" concerning the use of drugs. The issue is not, however, whether a pharmacist could *ever* be considered a therapist within the meaning of the Confidentiality Act. It is not the function of this court to consider abstract propositions of law. The issue is whether the defendant acted as a therapist *in this case* in light of the facts alleged in plaintiff's complaint. Those facts are that plaintiff brought a prescription for drugs used in the treatment of mental health disorders to defendant, he "questioned [p]laintiff about her treatment and medical condition" and plaintiff "disclosed certain confidential information" to the defendant. Even if one ignores the conclusory nature of the allegations and accepts them as true, they fall far short of demonstrating, or even suggesting, the existence of a therapeutic relationship. There is no allegation that defendant advised or counseled plaintiff, provided her with health information, recommended anything or advised her in any way. Regardless of how broadly one construes the Confidentiality Act, the facts alleged here simply fail to state a cause of action. This court must not, under the guise of statutory interpretation, engage in what amounts to judicial amendment of plaintiff's complaint.

■ Finally, plaintiff contends that the trial court erred in dismissing count II of her amended complaint. Count II alleged the same facts contained in count I and also alleged that the Pharmacy Act imposed a duty of confidentiality on defendants. Plaintiff further alleged that she and defendants entered into an implied contract whereby it was "assumed and understood" that the information

obtained by defendant Pierard was confidential and would not be disclosed. Plaintiff alleged that Pierard breached the implied contract and thereby deprived plaintiff "of the benefit of the pharmaceutical services which were rendered to her."

One element essential to the formation of a contract is mutual assent by the parties to be bound; one may not be subjected to contractual obligations unless the obligation is clearly fixed by an express or implied agreement. *Zadrozny v. City Colleges*, 220 Ill. App. 3d 290, 581 N.E.2d 44 (1991). The law recognizes two kinds of implied contracts, those implied in fact and those implied in law. *Estate of Jesmer v. Rohlev*, 241 Ill. App. 3d 798, 609 N.E.2d 816 (1993). A contract implied in fact imposes a contractual duty by reason of a promissory expression which may be inferred from the facts and circumstances and by expressions on the part of the promisor showing an intention to be bound. *In re Estate of Milborn*, 122 Ill. App. 3d 688, 461 N.E.2d 1075 (1984). Count II of plaintiff's complaint does not allege any facts or circumstances which raise an inference that defendants promised or otherwise expressed an intention to keep plaintiff's prescription information confidential. Plaintiff has failed to state a cause of action based on a contract implied in fact.

A contract implied in law differs from one implied in fact in that it arises by implication of law, apart from the usual rules relating to contracts; it does not depend on an agreement or consent of the parties. *Milborn*, 122 Ill. App. 3d 688, 461 N.E.2d 1075. Such a contract is equitable in nature, predicated on the fundamental principle that no one should unjustly enrich himself at another's expense. *Milborn*, 122 Ill. App. 3d 688, 461 N.E.2d 1075. "The essence of a cause of action for a contract implied in law is the defendant's failure to make equitable payment for a benefit which it voluntarily accepted from the plaintiff." *Sprowls v. First State Bank*, 204 Ill. App. 3d 514, 516, 561 N.E.2d 1292, 1294 (1990); see also *Woodfield Lanes, Inc. v. Village of Schaumburg*, 168 Ill. App. 3d 763, 523 N.E.2d 36 (1988).

In this case, plaintiff failed to allege any facts suggesting that defendants were unjustly enriched at plaintiff's expense. Rather, plaintiff once again attempts to rely on section 3 of the Pharmacy Act as imposing a duty on defendants to keep information confidential. However, as we have indicated, the Pharmacy Act does not create a cause of action for damages for breach of confidentiality. Moreover, the statutory provision upon which plaintiff relies was not in effect when the alleged contract was made. While existing laws and statutes become implied terms of a contract as a matter of law (*Mitchell Buick & Oldsmobile Sales, Inc. v. McHenry Savings Bank*, 235 Ill. App. 3d 978, 601 N.E.2d 1360 (1992)), it "is well settled that only

statutes in force at the time a contract is made are incorporated therein" (*George D. Hardin, Inc. v. Village of Mount Prospect*, 99 Ill. 2d 96, 102, 457 N.E.2d 429, 431 (1983)). Plaintiff has failed to state a cause of action based on a contract implied in law. We find that the trial court did not err in dismissing count II of plaintiff's amended complaint.

For the reasons stated above, the judgment of the circuit court is affirmed.

Affirmed.

PRESIDING JUSTICE BRESLIN, specially concurring:

While I agree that pharmacists are not "therapists" as the term is defined by the Confidentiality Act, I disagree with the assertion that a pharmacist's function is merely that of a supplier of a product. Pharmacists do much more. They maintain extensive patient records and counsel patients on drug interactions. In doing so, they can literally reconstruct a patient's medical history. Surely the public has a right to expect that pharmacists will keep the health conditions and treatments of their clients in confidence. For these reasons, I believe pharmacists should have been included within the Act's definition of therapist. Regretfully, however, they were not.

Regardless of the fact that the Act does not apply to pharmacists, plaintiff was not without a remedy. Although the facts alleged in plaintiff's complaint do not state a cause of action for breach of an implied contract, the facts do appear to make out a claim for public disclosure of private facts. See *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 560 N.E.2d 900 (1990) (outlining the elements of a claim for public disclosure of private facts). While I sympathize with the plaintiff if the statute of limitations may have run on this remedy, that does not justify approving a cause of action that is inappropriate to the facts alleged.

JUSTICE LYTTON, dissenting:

I respectfully dissent. I believe that plaintiff has stated a valid cause of action pursuant to the Mental Health and Developmental Disabilities Confidentiality Act (Act) (740 ILCS 110/1 *et seq.* (West 1992)).

The issue presented is *not* whether "a pharmacist [becomes] a provider of mental health services simply by filling a prescription for drugs used to treat a mental condition." 278 Ill. App. 3d at 771. The function of this court is not to answer abstract issues of law. Instead, the issue is whether plaintiff will be able to prove any set of facts

that would entitle her to relief. Under the circumstances in this case, plaintiff could "reasonably believe" that defendant was performing the services of a therapist.

The focus of the Act is the confidentiality of a recipient's records and communications, not the occupational label applied to the provider of services. See *House v. SwedishAmerican Hospital*, 206 Ill. App. 3d 437, 442, 564 N.E.2d 922, 926 (1990); *Johnson v. Lincoln Christian College*, 150 Ill. App. 3d 733, 741-42, 501 N.E.2d 1380, 1385 (1986), quoting *Martino v. Family Service Agency*, 112 Ill. App. 3d 593, 599-600, 445 N.E.2d 6, 11 (1982); see also *People v. Doe*, 103 Ill. App. 3d 56, 58, 430 N.E.2d 696, 698 (1981). The Act protects "any communication made by a recipient" of mental health services. 740 ILCS 110/2(1) (West 1992). "Mental health services" include but are "*not limited to *** pharmaceuticals.*" (Emphasis added.) 740 ILCS 110/2(3) (West 1992). A "pharmaceutical" is defined as "of or relating to pharmacy or pharmacists." Webster's Third New International Dictionary 1694 (1986). The statute does not restrict the scope of this term to the act of prescribing drugs. Under the Pharmacy Practice Act, the practice of pharmacy includes "*advising or counseling patients* on the use of drugs or devices," "*providing health information* related to drugs and medical devices," "assisting the user *** in keeping personal medication records and complying with prescribed therapy," and "*recommending or advising*" concerning contents and therapeutic values and uses. (Emphasis added.) 225 ILCS 85/3(d)(2), (d)(6), (d)(8), (d)(9) (West 1992). The majority completely ignores this statute and stubbornly refuses to acknowledge that it explicitly extends the role of modern pharmacists beyond the "mere dispensing" of drugs. Even the special concurrence admits that pharmacists sometimes "do much more" than fill prescriptions.

The Pharmacy Practice Act and the Confidentiality Act should be read together. The majority's cramped view in this case slices up the statutory pie instead of looking at the whole; apparently, the majority is unable to digest this particular combination of complementary legislation.

The broad language of the Act indicates that the legislature intended to embrace a wide range of persons and services. A duty of confidentiality is imposed on anyone acting as a "therapist," which includes "any other person not prohibited by law from providing [mental health] services *** *if the recipient reasonably believes that such person is permitted to do so.*" (Emphasis added.) 740 ILCS 110/ 2(9) (West 1992). The majority contends that "[w]arning about potential side effects is not therapy." 278 Ill. App. 3d at 771. Perhaps, but this is *not* the question before the court, and plaintiff does not al-

lege that it is. In this case, plaintiff has alleged that, in addition to filling her prescription, the defendant pharmacist also questioned her about her treatment and condition. In doing so, the pharmacist conducted activities similar to those of a therapist. Surely a jury should be allowed to determine whether Suarez "reasonably believe[d]" that Pierard was permitted to, and in fact did, provide therapeutic services within the meaning of these statutes. See 740 ILCS 110/2(9) (West 1992).

A motion to dismiss cannot be granted unless no set of facts could be proved to support the plaintiff's claim for relief. *Commerce Bank v. Plotkin*, 255 Ill. App. 3d 870, 872, 627 N.E.2d 746, 748 (1994). Here, a question of fact remains as to whether Suarez "reasonably believe[d]" that Pierard's actions created a therapeutic relationship. The finder of fact must be allowed to decide this issue after all the evidence regarding the interaction between the parties has been presented at trial.

Because I cannot agree with its narrow analysis, I dissent from the majority opinion. The language of the Act is broad enough to include a pharmacist who consults with a recipient prior to providing drugs that were prescribed for treatment of a mental health disorder.

For the foregoing reasons, I would reverse the trial court's dismissal of count I of Suarez's complaint, alleging a violation of the Mental Health and Developmental Disabilities Confidentiality Act, and remand for further proceedings.